FORT WORTH & DENVER CITY RAILWAY COMPANY v. AARON CUSHMAN, BY NEXT FRIEND.

Decided June 13, 1908.

**1.—Personal Injuries—No Liability without Negligence.**

In a suit for damages for personal injuries received by a minor while riding upon a moving freight train in the yards of a railroad company, the court by its charge made the defendant company conclusively liable if any of the employes operating the train knew that the plaintiff had caught or would catch and hold onto the moving train, regardless of whether or not his injuries resulted from any negligence on the part of defendant's employes. Held, reversible error.

**2.—Trespassing Children—Duty of Railroads.**

Each case involving the liability of railroads for injury to trespassing children must depend for the most part upon its own peculiar circumstances. While the authorities conflict, the better reason requires those engaged in a dangerous business to exercise at least ordinary care in the conduct of such business to avoid loss of life or limb of even a trespasser. And this rule applies with greater force when the trespasser is a child of tender years.

**3.—Same—Case Distinguished.**

In a suit for damages for personal injuries received by a child six years old while holding on to a freight train, evidence considered, and held to raise a question of fact for the jury as to defendant's negligence. St. Louis S. W. Ry. Co. v. Davis, 110 S. W., 939, distinguished.

Appeal from the District Court of Dallam County. Tried below before Hon. J. N. Browning.

*Spoonts, Thompson & Barwise, D. B. Hill* and *J. M. Chambers,* for appellant.

*Hyde & Stalcup,* for appellees.—The court was clearly justified in giving to the jury paragraph 7 of its charge under the law and facts in this case. The court had already stated to the jury in its charges that before the appellee could recover they must find that the appellant was negligent; had given to the jury a proper definition of ordinary care and in this charge, paragraph 7, required the jury to consider the other charges in connection with it. Thompson v. M. K. & T. Ry. Co., 32 S. W., 191; St. L. & S. W. Ry. Co. v. Shifflet, 56 S. W., 697; Texas & P. Ry. Co. v. Brown, 33 S. W., 146; Olivaires v. S. & A. P. Ry. Co., 84 S. W., 248; Texas & P. Ry. Co. v. Harby, 67 S. W., 541.

The court very properly refused to give defendant's peremptory charge to return verdict in favor of defendant. Same authorities, also Thompson v. M. K. & T. Ry. Co., 67 S. W., 693; Houston, E. & W. T. Ry. Co. v. Ollis, 83 S. W., 850.

It is a question for the jury in all such cases to decide whether or not appellee was of sufficient age and intelligence to know of the dangers incident to his act, and the question of contributory negligence is always a question for the jury. Gulf, C. & S. F. Ry. Co. v. Evansich, 61 Texas, 3; Houston & T. C. Ry. Co. v. Simpson, 60 Texas, 103; Gulf, C. & S. F. Ry. Co. v. McWhirter, 77 Texas, 356; Ft. Worth & D. C. Ry. Co. v. Robertson, 16 S. W., 1093; Gulf, C. & S. F. Ry. Co. v. Evansich, 63 Texas, 54; Avey v. Galveston, H. & S. A. Ry. Co., 81 Texas, 243; Texas & P. Ry. Co. v. Phillips, 91 Texas, 281; Missouri, K. & T. Ry. Co. v. Rodgers, 89 Texas, 680.

CONNER, CHIEF JUSTICE.—This suit was instituted by the father of Aaron Cushman as next friend for damages to his said son, a minor, about eight years old. It was alleged that Aaron Cushman had one of his feet cut off by one of appellant's trains on a transfer track in Dalhart, Texas, and it was charged that appellant was guilty of negligence in permitting children to play on its right of way, to ride on its cars while switching and moving, and in failing to keep a watchman in the switch yards, etc. The defense consisted of pleas of denial and pleas of contributory negligence.

Briefly stated, the evidence shows that the line of appellant's railway at the point in question extends from the southeast to the northwest; that the Chicago & Rock Island Railway extends from the northeast to the southwest, crossing appellant's line at about a right angle; that from a point on the Rock Island Railway some distance south of the crossing of the two lines, a transfer track extends in a semicircle north and west to a connection with the Fort Worth & Denver north of said crossing, this transfer track being about half a mile in length; that Aaron Cushman, then a child of about six years of age, together with three or four other small boys, ranging from eight to twelve years old, was sitting near what is designated in the testimony as the "ice house;" this ice

house is on the east side of the Rock Island Railway, south of the crossing of the two railways and a short distance north of the south end of said transfer track; that this transfer track was used for the purpose of transferring cars from one line of railway to the other, and on the occasion in question one of appellant's train crews was engaged in so transferring a number of cars that were standing on the southern end to the transfer track; the testimony shows that a brakeman was standing on the south end of the string of cars and another located about the center of the train; the engineer testifies that as he came down from the Fort Worth & Denver track to get the cars he saw the little boys about the ice house, but that after coupling on to the train and proceeding back toward the Fort Worth & Denver main line he soon passed out of their vision. The evidence further indicates that several, perhaps all, of the little boys, including Aaron Cushman, left their position at the ice house and ran across to the transfer track, some twenty feet away, and boarded the moving train; some of the boys clung to ladders, but Aaron Cushman grasped some slight projection in the open doorway of one of the cars and swung his feet to and upon a supporting rod extending from the front to the back end of the car, and after riding a short distance in this position he slipped and fell off, as he testified, and had one of his feet severed. He testified that he had ridden but some five or six steps, but there was other testimony indicating that he had perhaps ridden to a point about ninety feet from the appellant's main line. Aaron testified that at the time he got upon the car, as stated, it was going slow enough to enable him by running along the side to get upon it, but that a little later it began to go more rapidly, when he slipped and fell off. The approach of the boys to the train was on the convex side of the curve and out of view of the fireman and of the engineer, as he testifies, and perhaps of the middle brakeman, the testimony showing that this brakeman was sitting on top of one of the cars about the center of the train on the western or concave side of the train. Neither of the brakemen testified upon the trial, but appellant's car foreman, Osborne, testified that at the time the boy was hurt, he was "something like ninety feet away from him;" that he did not see the boy at the time he fell off, but saw him as he was struggling to get up from the ground. The testimony of this witness also develops that one Scott, one of appellant's track walkers, was also there working with Osborne, and it does not appear that Scott testified. There was also testimony tending to show that for several years the transfer track and adjacent grounds were frequented by little boys of the town, which was practically bisected by appellant's line of railway, and that it was a very common occurrence for them to ride moving trains and play upon the cars, and there was evidence that no watchman had been stationed at the playground in question, and that no objection to this practice had been made. The country was level and the view generally unobstructed.

The court, after giving definitions of negligence and contributory negligence, and after defining appellant's duty to exercise ordinary care to avoid injury to children in the habit of playing upon and riding moving cars, if the jury found there was such custom, further gave the following charge, which is objected to: "Bearing in mind the foregoing definitions and instructions, if you believe and find from the evi-

dence that the plaintiff, Aaron Cushman, at the time and place alleged in his petition, caught and held on to a moving train then and there being operated by the servants and employes of defendant, and while so holding on to said moving train he fell under the wheels of the moving cars and received the injuries complained of; and you further find from the evidence that the servants and employes, operating said train, or any of them, knew that the plaintiff had caught or would catch and hold on to said moving train, and if you further find and believe that the plaintiff, at that time, was incapable, by reason of his age, to understand and appreciate the danger incident to his catching and holding on to said moving train, then and in such case, if you so find and believe, you will find for the plaintiff, and assess his damages as hereinafter directed. If you do not so find and believe, from the evidence, you will find for the defendant."

It seems apparent without discussion that the clause of the charge quoted is subject to the objection urged "that it authorized a verdict for plaintiff for his injuries regardless of whether or not such injuries resulted from any negligence on the part of defendant or its employes." It is evident that the court made appellant's liability conclusive if under the other circumstances submitted in the charge any of the employes operating the train "knew that the plaintiff had or would catch and hold on to said moving train." The evidence perhaps raises the inference that one or more of the operatives of the train either did or might in the exercise of ordinary care have seen the boys after they left the ice house with the evident purpose of getting upon the train, and if any halt in the movement of the train, any warning or other thing to avoid injury to the boys was done, it was not developed in the evidence; but, nevertheless, it was for the jury and not the court to say whether any warning or effort under the circumstances would have availed. In other words, a necessary element of plaintiff's recovery was negligence on appellant's part proximately causing the final result, and the charge manifestly took this issue from the jury, because of which the judgment must be reversed.

Appellant further insists with much force that the evidence conclusively shows that it was not guilty of any negligence, and that the judgment therefore should be reversed and here rendered against appellee. The subject of a railway's duty to trespassing children has been so frequently and variously discussed in adjudicated cases that it seems profitless to review the decisions or attempt to draw distinctions available here. In many cases it has been held that it is not the duty of a railway company to guard its cars against them. See 3 Elliott on Railways, sec. 1260, and authorities cited in note 116, and appellant cites in support of its contention the case of St. Louis Southwestern Ry. Co. v. Davis, 110 S. W., 939, recently decided by the Court of Civil Appeals for the Sixth District. Every case, however, we think must depend for the most part on its own peculiar circumstances. Many authorities, and, as we think, the better reason always requires those engaged in a dangerous business to at least exercise ordinary care in conducting such business to avoid loss of life or limb of a trespasser even, when a reasonable probability of such injury is known, or where in the exercise of ordinary care it would have been known, and we think that such rule is unquestionably

to be applied in the protection of a trespassing child of such tender years as to be devoid of discretion, and that might be reasonably contemplated to act upon the childish impulse to assume a position of danger. (St. Louis S. W. Ry. Co. v. Abernathy, 28 Texas Civ. App., 613; Ollis v. Houston, E. & W. T. Ry. Co., 31 Texas Civ. App., 601; Davis v. St. Louis S. W. Ry. Co., 92 S. W., 831; Missouri, K. & T. Ry. Co. v. Edwards, 90 Texas, 65; North Texas Const. Co. v. Bostick, 98 Texas, 239.)

While the case of Ry. Co. v. Davis so strongly pressed upon us in behalf of appellant is forceful, we yet think it distinguishable from the case before us in several particulars. The minor there in question was at the time of his injury of somewhat more mature age. He had been warned against riding the moving train, and the court finds that it conclusively appears that the operatives of the train did not know that he had boarded it. In the case we have, however, Aaron Cushman was but about six years old at the time of his injury, and it is not even contended before us that a child of such tender age has sufficient discretion to understand the danger of his undertaking, and when the evidence tending to show the long continued practice of the little boys of Dalhart to jump upon and ride trains is considered, together with the unobstructed view of the situation, the testimony of the engineer that he saw the boys so near, the situation of the brakeman upon the train, the absence of any denial on their part of the want of observation or knowledge, thus raising perhaps an inference that they not only saw the little boys at the ice house, and hence could have reasonably contemplated the action taken by them, but further saw them after a manifestation of their purpose to get upon the moving train, with other circumstances, all render in our judgment the question of negligence chargeable to appellant one for the jury.

For the error in the court's charge the judgment is reversed and the cause remanded.

*Reversed and remanded.*